UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| MELISSA D. MULLINS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 13-114-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN COLVIN, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Melissa D. Mullins brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security (Commissioner) denying Mullins' application for disability insurance benefits (DIB) and supplemental security income (SSI). The Court, having reviewed the record and for the reasons set forth herein, will deny Mullins' Motion for Summary Judgment [R. 12] and grant the Commissioner's [R. 13].

I

Mullins protectively filed applications for DIB and SSI on February 7, 2011. [Transcript (Tr.) 191-94]. She alleges a disability beginning on January 20, 2011, due to Charcot-Marie-Tooth (CMT) syndrome and severe allergies. [Tr. 229]. Mullins' applications were denied initially and upon reconsideration [Tr. 51, 66, 81, 108-121]. Subsequently, at Mullins' request, an administrative hearing was conducted before Administrative Law Judge (ALJ) Don C. Paris on August 21, 2012. [Tr. 156-76]. During the hearing, the ALJ heard testimony from Mullins and vocational expert (VE) Tina Stambaugh. [Tr. 25-50]. Mullins, who was thirty-seven years

old at the time of the hearing, has a high school education, and she has past relevant work experience as a cook at a detention center cafeteria and a retail clerk/cashier. [Tr. 229]. Although the VE testified that Mullins could no longer perform her past work, she found that there are jobs that exist in significant numbers in the national economy that Mullins could perform, and the ALJ accepted that testimony. [Tr. 46-50.]

In evaluating a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R. §§ 404.1520, 416.920.[1] First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

In this case, at Step 1, the ALJ found that Mullins has not engaged in substantial gainful activity since January 20, 2011, the alleged onset date. [Tr. 13]. At Step 2, the ALJ found that

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

Mullins' Charcot-Marie-Tooth (CMT) syndrome[2] and obesity constituted severe impairments. [Tr. 13-14]. At Step 3, the ALJ found that Mullins' impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. [Tr. 14-15]. At Step 4, the ALJ determined that Mullins has the residual functional capacity (RFC) to perform a range of sedentary work, with limitations. [Tr. 15-17]. The ALJ therefore found that Mullins is unable to perform any past relevant work. [Tr. 17-18]. However, at Step 5, the ALJ relied on the testimony of the VE to find that, based on Mullins' residual functional capacity, there are jobs that exist in significant numbers in the national economy that Mullins could perform. [Tr. 18-19]. Accordingly, on August 21, 2012, the ALJ issued an unfavorable decision, finding that Mullins was not disabled and was therefore ineligible for DIB and SSI. [Tr. 19]. The Appeals Council declined to review the ALJ's decision on March 21, 2013 [Tr. 1-3] and Mullins now seeks judicial review in this Court.

II

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without

---

[2] CMT syndrome is a genetic nerve disorder that affects peripheral nerves and causes peroneal muscular atrophy, which leads to weakness in extremities, including legs, ankles, feet, and hands. High foot arching or hammertoes are early symptoms. [Tr. 14; *see also* MedLine Plus, U.S. National Library of Medicine, "Charcot-Marie-Tooth Disease," *available at* http://www.nlm.nih.gov/medlineplus/charcotmarietoothdisease.html.]

3

interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Id.* (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id.* (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983); *Mullen*, 800 F.2d at 545.

A

Mullins first argues that ALJ Paris improperly discounted the opinion of her treating specialist without providing adequate reasons for doing so. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 529-530 (6th Cir. 1997) (citing *Kirk v. Secretary of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). Under 20 C.F.R. § 404.1527(d)(2), however, a treating source's opinion on the issues of the nature and severity of a claimant's impairments will be given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)).

4

"If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors – namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Id.* at 544.  Further, an ALJ is required to give "good reasons" for not giving weight to opinions from the treating physician in a disability determination.  20 C.F.R. § 404.1527(d)(2).  The purpose of this requirement is to "let claimants understand the disposition of their cases," to "ensure[] that the ALJ applies the treating physician rule," and to "permit[] meaningful review of the ALJ's application of the rule." *Wilson,* 378 F.3d at 544 (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5; *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999); *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004)); *see also Gayheart v. Comm'r of Social Security*, 710 F.3d 365, 376 (6th Cir. 2013).

Dr. Lisa Degnore, an orthopaedic surgeon, is Mullins' treating specialist.  [Tr. 16].  Dr. Degnore diagnosed Mullins with CMT Syndrome on September 24, 2010.  [Tr. 718].  After conducting foot x-rays, Dr. Degnore noted that Mullins had a "significant deformity" in her right foot, which was arching and causing her great toe to claw. [Tr. 718-20]. Her notes also indicate that Mullins said she was experiencing weakness in her hands. [Tr. 718].  Dr. Degnore scheduled Mullins for surgery to attempt to level the foot so that it could be braced, and she stated in her treatment notes that, since the disease is progressive in nature, surgery is performed in a "stepwise fashion" for this disease and Mullins "will definitely have more surgery in her future." [Tr. 719-20].  Later, Dr. Degnore stated in a prescription slip dated October 18, 2010: "[Patient] has new diagnosis of Charcot Marie Tooth Syndrome and is permanently 100% disabled." [Tr. 723].

Mullins underwent surgery on April 8, 2011. [Tr. 737-43]. According to Dr. Degnore's post-surgery notes, Mullins was "doing well" and the surgery was successful in correcting the arch and claw toes into a better position. [Tr. 730-31]. She was prescribed physical therapy, a 3-D walker, and a knee compression brace or hose. [Tr. 728, 733]. In notes from Mullins' her final post-operative follow-up on August 3, 2011, Dr. Degnore reiterated that "[Mullins] has done well" and advised that additional procedures may be required to enable Mullins to walk "if her foot tips back again . . . or if the other foot gets worse." [Tr. 713]. Dr. Degnore also stated that "[Mullins] is not able to go to work on her feet all day as a cook." [Tr. 733]. Mullins has not returned to Dr. Degnore. [Tr. 35].

Dr. Degnore completed medical assessment questionnaire on August 11, 2011. [Tr. 712-16]. She opined that that Mullins had functional limitations due to "weakness and deformity [in her] legs and feet, [as well as] weakness [in her] upper extremities" caused by CMT Syndrome. [Tr. 715, 712]. Dr. Degnore recommended that Mullins could only lift or carry less than ten pounds on a frequent basis. [*Id.*] Mullins could stand or walk for less than two hours in an eight-hour workday, and she could sit for four hours in an eight-hour workday. [*Id.*] Dr. Degnore opined that Mullins could never perform postural maneuvers such as climbing, balancing, stooping, and crawling, and she noted that Mullins' manipulative functions (i.e., reaching, handling, and feeling, and pushing/pulling) were also affected by her impairments. [Tr. 714].

ALJ Paris afforded Dr. Degnore's opinions little weight for all periods beyond the acute healing stages of Mullins' surgery because her opinion of complete disability was inconsistent with her own treatment notes. [Tr. 17]. First, he noted that Dr. Degnore's comments about Mullins' ultimate work functionality or disability seen in her prescription pad note or in various medical records were not controlling and were, instead, a determination that is left to the

province of the Commissioner. [Tr. 17]. "The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(e)(1)). As a result, "[n]o special significance [is] given to opinions of disability, even if they come from a treating physician." *Id*. (citing 20 C.F.R. § 404.1527(e)(3) (2006); SSR96–5: Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner, 61 Fed. Reg. 34471, 34473 (Soc. Sec. Admin. July 2, 1996)) (internal quotes omitted). Dr. Degnore's statements regarding Mullins' functionality and ultimate disability cannot be a medical opinion, but are instead determinations of disability, which is reserved to the Secretary. ALJ Paris properly refused to give significant weight to those particular comments on this ground.

Even though a treating physician's opinion on an issue reserved to the Commissioner does not receive controlling weight, the ALJ must still "explain the consideration given to the treating source's opinion(s)." *Id*. (citing SSR 96–5: Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner, 61 Fed. Reg. at 34474). ALJ Paris explained that, although he agreed with Dr. Degnore's clinical notations that Mullins could not return to work as a cook, the objective medical evidence from Mullins' post-operative progress is inconsistent with Dr. Degnore's finding of complete disability. [Tr. 17]. ALJ Paris stated that Dr. Degnore's findings of "good alignment [of the foot], therapy, bracing and progressive ambulation" supported an RCF for sedentary exertion. [*Id.*]

Elsewhere in the decision, ALJ Paris offers specific examples and direct citation to the record that demonstrate how Dr. Degnore's functionality opinions are inconsistent with medical evidence in her own treatment notes. [Tr. 16]. ALJ Paris points out that Dr. Degnore's clinical notes state that the surgery was successful in correcting the arch and claw toes into a better

position. [Tr. 730-31]. He also notes that records from both follow-up appointments state that, aside from some pain and swelling associated with the acute healing stages from her surgery, Mullins was "doing well" post-surgery. [Tr. 730-31, 733-34]. Shortly after surgery, Dr. Degnore noted that Mullins should be able to walk with a 3-D walker and "slowly give up [the] crutches or cane" that she relied upon in her acute healing stages after surgery. [Tr. 730]. Indeed, the stated goal of her successful February 2011 surgery and her continued treatment is "to keep the feet straight so that [Mullins] can walk." [Tr. 733]. Her treatment notes demonstrate that – contrary to Dr. Degnore's comments about a total disability – Mullins is capable of sedentary exertion. Moreover, as ALJ Paris indicates in his decision, Dr. Degnore's treatment relationship did not continue past the acute healing stages of recovery, so her opinion and treatment notes do not accurately reflect or predict Mullins' post-surgery capacity. [*See* Tr. 17]. ALJ Paris' explanation, complete with specific examples and direct citation to the record, is sufficiently detailed to enable Mullins to understand why her treating physician's opinion was granted little weight and also to permit judicial review. *Wilson,* 378 F.3d at 544 ; *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005); *see also Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006). Given the substantial evidence of the record, ALJ Paris was justified in according little weight to Dr. Degnore for periods after Mullins' acute healing stage.

B

Mullins' next argues that this case should be remanded because Dr. David Swan, a state agency consultative physician to whom the ALJ accorded significant weight, was not a qualified expert and was unreliable. Dr. Swan is a state agency consultative physician who completed an RFC assessment on June 1, 2011. [Tr. 71-80]. Projecting his opinion to assess Mullins' RFC after full surgical recovery, he opined that Mullins' maximum sustained work capacity was

8

sedentary exertion, and that she had significant exertional and postural limitations due to what he considered a "severe impairment in her right foot and a more modest impairment in her left foot." [Tr. 62].[3]

Mullins first claims that Dr. Swan is not a qualified expert specializing in the field of hereditary motor sensory neuropathy. [Pl.'s Mot. Summ. J., R. 12-1 at 10]. Citing a website listing Dr. Swan's practice areas, Mullins argues that Dr. Swan's qualifications are questionable since he is a gynecologist, not an orthopaedic surgeon like Dr. Degnore. [Pl.'s Mot. Summ. J., R. 12-1 at 10-11].

"State agency medical and psychological consultants . . . are highly qualified physicians . . . who are also experts in Social Security disability evaluation," and whose findings and opinions the ALJ "must consider . . . as opinion evidence." *Lee v. Comm'r of Soc. Sec.*, 529 Fed. Appx. 706, 712 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(e)(2)(i)); *see also Leach v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 108858, *39 (E.D. Mich. June 11, 2013); Social Sec. Ruling 96-6p, 1996 SSR LEXIS 3, *4 (1996). An ALJ is required to weigh the opinions of non-examining sources, including state agency medical consultants, with reference to a number of factors, "such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions." 20 C.F.R. 404.1527(e)(2)(ii). The specialization of a State agency medical consultant may have a bearing on the weight to which an opinion is entitled. Social Sec. Ruling 96-6p, 1996 SSR LEXIS 3 at *6. Specifically, the regulations explain that "[the ALJ will] generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the

---

[3] Dr. Jack Reed, another state agency consultant, subsequently reached the same opinion in his RFC assessment dated July 12, 2011. [Tr. 82-94].

opinion of a source who is not a specialist." 20 CFR 404.1527(c)(3). The regulations also require that

The plain language in the regulations states that Dr. Swan, as a state agency medical consultant, is a qualified physician who is an expert in the area of Social Security disability evaluations. 20 C.F.R. § 404.1527(e)(2)(i). Moreover, the fact that Dr. Swan is not a specialist in the particular area at issue is not dispositive. The regulations make clear that state agency consultant's specialty – if any – is just one factor that "*could* have a bearing on the weight to which [a consultant's] opinion is entitled." Social Sec. Ruling 96-6p, 1996 SSR LEXIS 3 at *6 (emphasis added). Here, ALJ Paris' decision focuses on the most persuasive factors in the analysis: the consistency and supportability of Dr. Swan's opinion with the objective medical evidence in the record. [Tr. 17]. ALJ Paris stated that Dr. Swan's RFC assessment for "sedentary activities, with significant postural limitations, and the need to avoid workplace hazards" was "supported by the overall case record." [*Id.*] As has already been explained in detail above, the RFC determination reflected in Dr. Swan's opinion is indeed supported by substantial, objective evidence in the record. The Court will not disturb the ALJ's reasonable weighing of the relevant factors in this analysis.

Mullins also argues that remand is warranted since Dr. Swan was the subject of disciplinary proceedings before Kentucky Board of Medical Licensure in 1996 and, according to a 1999 Tennessee Court of Appeals opinion,[4] testified falsely about the state of his license while being deposed as an expert witness deposition in a medical malpractice lawsuit filed in 1993. Though she cites no legal basis for this claim, Mullins ostensibly contends that, in light of this

---

[4] Mullins cites and attaches as an exhibit *Sneed v. Stovall*, 156 S.W.3d 1, 2004 Tenn. App. LEXIS 201 (Tenn. Ct. App. 2004) (citing *Sneed v. Stovall*, 22 S.W.3d 277 (Tenn. Ct. App. 1999)). [R. 12-2].

newly submitted evidence, this Court should remand her claim under sentence six of 42 U.S.C. § 405(g).

The Sixth Circuit has long held that evidence submitted "after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citing *Cline v. Comm'r of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996)). However, pursuant to sentence six of § 405(g), a district court may remand the case for further proceedings in light of the new evidence, "but only upon showing that there is *new* evidence which is *material* and that there is *good cause* for the failure to incorporate such evidence into the record in a prior proceeding. . . ." *Oliver v. Secretary of Health & Human Services*, 804 F.2d 964, 966 (6th Cir. 1986) (citing 42 U.S.C. § 405(g)) (emphasis in original). The claimant bears the burden of showing that a remand is appropriate. *Foster*, 279 F.3d at 357.

Mullins implies that Dr. Swan's past discipline renders him unqualified within the meaning of 20 C.F.R. 404.1529(b). That regulation states that the medical source "must be *currently* licensed . . . [and] must not be barred from participation in [Social Security] programs under the provisions of 20 C.F.R. 404.1503a, which precludes the use of "any individual . . . whose license to provide health care services is *currently* revoked or suspended by any State licensing authority." 20 C.F.R. 404.1529(b) (emphasis added); 20 C.F.R. 404.1503a (emphasis added). But Mullins has not provided any new or material evidence that Dr. Swan *currently* fails to meet any of those requirements.  Moreover, to the extent Mullins suggests this evidence could be used for impeachment purposes, such a use is not contemplated in the above-cited factors for an ALJ's analysis of a non-examining source, and Mullins has cited no authority allowing such an unprecedented use.  On the facts in her brief, she cannot show that there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if

11

presented with [this] new evidence," *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988), and remand is not warranted on this ground.

C

Finally, Mullins argues that the state agency consultative physicians' assessments and the ALJ's RFC determination fail to take into account her alleged hand and arm weakness and numbness resulting from CMT Syndrome. First, Mullins contends that the opinions of state agency consultative physicians Dr. Swan and Dr. Reed are inconsistent with the record because they indicate that Mullins has no manipulative limitations, while – according to Mullins – Dr. Degnore's treatment notes reflect that "Mullins' hand [sic] show profound intrinsic weakness." [Pl.'s Mot. Summ. J., R. 12-1 at 11]. She also argues that ALJ Paris failed to consider the effect that CMT Syndrome would have on the use of her hands in an employment setting. [*Id.* at 11-]. In relevant part, Dr. Degnore's RFC assessment on August 11, 2011 opined that Mullins' reaching, handling, feeling, and pushing and pulling were affected by her impairment. [Tr. 713].

Contrary to Mullins' characterization of Dr. Degnore's treatment notes, Dr. Degnore's notes and the objective evidence in the record as a whole do not document how, if at all, CMT Syndrome has affected Mullins' hands. The only fleeting reference to Mullins' upper extremities to be found in Dr. Degnore's clinical notes is Mullins' subjective statement that she "has noted some" hand weakness and "has started dropping things." [Tr. 718]. The rest of Dr. Degnore's notes, and indeed, the rest of the relevant portions of the medical record, are focused on Mullins' foot deformities and lower extremity weakness. Mullins' surgery was for her foot deformity. [R. 737-43]. The x-rays and studies ordered by Dr. Degnore only pertain to Mullins' feet, [Tr. 721, 719, 731, 734]. Dr. Degnore did not appear to perform any tests or detailed examination of Mullins' hands, and, though prompted to identify the medical findings that supported her

manipulative limitations assessment, Dr. Degnore only cited "weakness [at] UE [upper extremities]." [Tr. 714]. Even the physical therapy prescribed by Dr. Degnore relates only to Mullins' lower extremities. [*E.g.*, Tr. 708-10].

Indeed, although Mullins correctly notes that CMT Syndrome *can potentially* affect all extremities, including hands,[5] the Court's careful review of the administrative record does not reveal – and Mullins has not specifically cited – any objective documentation of such an impairment. Clinic notes, medical tests, and imaging ordered by other doctors also focused on the impairments in Mullins' lower extremities – not the upper extremities. For instance, after ordering a Nerve Conduction Study and Electromyography Report to assess all of Mullins' nerve functioning, Dr. Andrew Schneider concluded that she had a "chronic neuropathic process in the legs," but found that Mullins' upper extremities and ulnar nerve conduction studies were "normal except for mild slowing of median conduction velocity." [Tr. 495-96]. *See, e.g.*, Tr. 470-71 (x-ray of foot); Tr. 472 (MRIs of brain, brainstem, and cervical spine requested "due to lower extremity symptoms"). In fact, elsewhere in the medical record, Dr. Gregory Cooper of the Baptist Neurology Center noted in June 2010 that, aside from motor responses that were indicative of carpal tunnel syndrome, "upper extremity nerve studies appeared relatively normal." [Tr. 455]. In light of the foregoing, the state agency consultants' assessments on Mullins' manipulative limitations are therefore not inconsistent with the record, and the ALJ did not err in declining to include Mullins' alleged upper extremity weakness in his impairment determination and his RFC determination.

---

[5] *See, e.g.*, MedLine Plus, U.S. National Library of Medicine, "Charcot-Marie-Tooth Disease," *available at* http://www.nlm.nih.gov/medlineplus/charcotmarietoothdisease.html (cited by ALJ Paris in his decision at [Tr. 13-14]).

13

III

Accordingly, for the foregoing reasons, it is hereby **ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment [R. 12] is **DENIED**;

(2) Defendant's Motion for Summary Judgment [R. 13] is **GRANTED**

(3) **JUDGMENT** in favor of the Defendant will be entered contemporaneously herewith.

This the 27th day of February, 2015.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge